DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, wherein the trial court terminated the parental rights of Sandra J. and Thomas J. and awarded permanent custody of their four children to Lucas County Children Services Board ("LCCS"). The following facts are pertinent to our disposition of this cause.
 {¶ 2} On March 19, 2003, LCCS filed a complaint in dependency and neglect and a motion for a shelter care hearing. The complaint alleged that Devon, Cameron, Thomas, and Kyle, the minor children of Sandra and Thomas, were living in an "unfit and unsafe" residence and that their mother could not care for them due to a broken ankle. According to the complaint, the children's father, who lives in Sandusky, Erie County, Ohio, could not take custody of the children because he was injured in a recent "bar fight" and was arrested. After holding a shelter care hearing, the juvenile court awarded temporary custody of all four children to LCCS. The court subsequently appointed a guardian ad litem for the children and an attorney for appellant. The children were adjudicated dependent and neglected on June 2, 2003.
 {¶ 3} Case plans were formulated for the children and for their parents, with a goal of reunification. However, on October 7, 2004, LCCS, filed a motion for permanent custody of all four children. At the R.C. 2151.414(A) hearing held on appellee's motion, the following relevant facts were adduced.
 {¶ 4} Rebecca Sears, an employee of LCCS, testified that she was Sandra's caseworker from February 2002 until October 2003. During that period, LCCS offered services to appellant, who lives in Lucas County, and to the children's father, who resides in Erie County. During a home visit, however, the caseworker saw that appellant and her children were living in dirt, garbage, old food, and various other trash, which was, in some places, "knee deep" in the home. Sears also observed that some dangerous items, such as medicine and knives were within the children's reach.
 {¶ 5} At that time, appellant had a broken ankle and, in combination with a thyroid condition that causes "heart palpitations, tiredness and weakness," claimed that she could not properly care for her children. In addition, one child had a severe case of head lice, and some had been diagnosed with mental or physical disorders. Furthermore, two of the children were sexually "acting out." Therefore, the children were removed from the home. Subsequently, all four were adjudicated dependent and neglected, and temporary custody was awarded to LCCS.
 {¶ 6} Once the children were placed in the temporary custody of LCCS, appellant was offered services that included parenting classes and counseling; later, substance abuse assessment and urine drops were added to the plan. Her participation in her case plan was described as "sporadic." Despite compliance with of some aspects of her case plan, appellant failed to demonstrate an ability to apply what she learned to everyday life. In particular, she continued to put herself in situations where other persons controlled or manipulated her. Appellant also suffers from seizures and continued to be unable to physically care for herself or others due to her thyroid condition.
 {¶ 7} There were many times appellant failed to avail herself of the opportunity to visit with her children. Additionally, as stated previously, appellant has severe mental health problems, including depression and self mutilation. Sandra was also the subject of domestic violence a number of times. She was raped on at least one occasion by a friend's brother and was beaten by "boyfriends" and others, most recently by her current boyfriend. Appellant also has a criminal record that includes child endangerment, soliciting, receiving stolen property, and identity theft. The last three offenses occurred while the children were in the temporary custody of LCCS. As a result of the conviction for receiving stolen property and identity theft, appellant was ordered to be placed on electronic monitoring for 60 days. Because she violated that order, appellant was incarcerated.
 {¶ 8} The children's father was offered services that included outpatient substance abuse treatment for alcoholism and parenting classes. At the outset, Thomas did not show any interest in participating in offered services. It was only after it became evident that LCCS was going to seek permanent custody of his children, that he successfully completed the substance abuse program. However, he did not engage in after care or attend AA meetings. Thomas did attend and complete parenting classes, but he lived with his mother and siblings, and there is no room for his children. Although employed, he apparently either could not or would not find other suitable housing for himself and his children. Despite the fact that he was provided with opportunities to see Devon, Cameron, young Thomas, and Kyle, their father only saw them "about once a month."
 {¶ 9} The children have many health issues. Specifically, (1) Kyle has underdeveloped muscles in his mouth and, therefore, requires speech therapy; (2) Kyle also suffers from Attention Deficit Hyperactivity Disorder; (3) Cameron was diagnosed as having Attention Deficit Hyperactivity Disorder, Oppositional Defiant Disorder, Post-Traumatic Stress Disorder, and at a later point, was diagnosed as actually being bipolar and suffering from depression; (4) Devon is being treated for a "major depression disorder;" and (5) Thomas has Attention Deficit Hyperactivity Disorder, Post Traumatic Stress Syndrome, Oppositional Defiant Disorder, Attention Deficit Hyperactivity Disorder, and Reactive Attachment Disorder.
 {¶ 10} At the time of the permanent custody hearing, the children resided in two separate foster homes-the girls in one home and the boys in another. All four children are doing well in their foster homes, but all also expressed a desired to reside with their mother. The girls further stated that if permanent custody was awarded to LCCS, they would prefer to be placed in the same home as their brothers.
 {¶ 11} Based upon the evidence offered at trial, the juvenile judge terminated the parental rights of appellant and Thomas, and awarded permanent custody of their four children to LCCS. Thomas did not appeal the trial court's judgment. Appellant appeals and asserts that the following errors occurred in the proceedings below:
 {¶ 12} "When four children wish to return to their mother, are bonded to their mother, are bonded to one another and are unable to be placed in homes together, a finding that it would be in the best interest of said children to be placed in LCCS's custody is against the manifest weight of the evidence."
 {¶ 13} "The trial court's findings of fact that the children cannot or should not be placed with mother pursuant to ORC2151.414(E)(1)(4) and (14) was against the manifest weight of the evidence."
 {¶ 14} "The court committed an abuse of discretion by failing to appoint an attorney for the children where the children's wishes were different from the recommendation of the guardian ad litem, and where the guardian ad litem requested that an attorney be appointed."
 {¶ 15} Prior to dealing with appellant's first and second assignments of error, which ask us to consider whether clear and convincing evidence was offered in support of an award of permanent custody to LCCS, we shall dispose of appellant's third assignment of error. Appellant maintains that the trial court abused its discretion by failing to appoint an attorney for the four children in this case when the children expressed a wish to be returned to the custody of their mother while their guardian ad litem recommended that it would be in the best interest of the children to award permanent custody to LCCS. Appellant claims that this failure to appoint said counsel is particularly egregious due to the fact that the guardian ad litem specifically requested the appointment of counsel for the children.
 {¶ 16} The record of this cause reveals that the children's guardian ad litem filed a motion to appoint counsel for the children because she anticipated that her recommendation as to custody and the wishes of the children would be in conflict. The motion was granted, and separate counsel for the children was appointed on March 10, 2005. Due to the allegation of a conflict, the juvenile judge held an in camera hearing at which all four children expressed their desire to be returned to the custody of their mother. The appointed attorney represented the children and participated fully in the permanent custody hearing. Accordingly, we must find appellant's third assignment of error not well-taken.
 {¶ 17} Appellant's first and second assignments of error shall be considered together. The following legal principles are applicable to those assignments.
 {¶ 18} Parents have a constitutionally protected fundamental interest in the care, custody, and management of their children.Santosky v. Kramer (1982), 455 U.S. 745. Thus, parents have essential and basic rights to raise their own children. In reMurray (1990), 52 Ohio St.3d 155, 157. These rights, however, are not absolute. In re Sims, 7th Dist. No. 02-JE-2, 2002-Ohio-3458, at ¶ 23. Parental rights are always subject to the ultimate welfare of the child. In re Cunningham (1979),59 Ohio St.2d 100, 106. Nevertheless, before a juvenile court can terminate parental rights and award permanent custody to a public or private children services agency, it must find that clear and convincing evidence supports both portions of the permanent custody test set forth in R.C. 2151.414(B).
 {¶ 19} Therefore, as pertinent to the instant case, the court below was required to find that appellants' children could not be placed with either of their parents within a reasonable time or should not be placed with either of their parents. R.C.2151.414(B)(1)(a).
 {¶ 20} In reaching its determination of whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent, a court is guided by R.C. 2151.414(E). This statutory section sets forth 16 conditions that the court is required to employ in making its determination. It provides that if the trial court finds by clear and convincing evidence that any one of the 16 conditions exist, the court must enter the requisite finding. In re R.H.,
8th Dist. No. 84051, 2004-Ohio-5734, at ¶ 11.
 {¶ 21} The juvenile court must then also find that, pursuant to the factors set forth in R.C. 2151.414(D), clear and convincing evidence shows that permanent custody is in the best interest of the child. In re William S. (1996),75 Ohio St.3d 95, 99. Clear and convincing evidence is that which will cause the trier of fact to develop a firm belief or conviction as to the facts sought to be established. Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 22} In applying the standards set forth above, we shall initially consider appellant's second assignment of error. In that assignment, appellant contends that the trial court's judgment is against the manifest weight of the evidence on the question of whether, premised on the grounds provided in R.C.2151.414(E)(1), (4), and (14), her children could not be placed with their mother within a reasonable period of time or should not be placed with their mother.
 {¶ 23} R.C. 2151.414 reads, in material part:
 {¶ 24} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 25} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties"
 {¶ 26} "* * *
 {¶ 27} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 28} "* * *
 {¶ 29} "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect."
 {¶ 30} Appellant argues that that by the time of trial she had completed her case plan and substantially remedied the conditions that caused the children to be removed from her care. We disagree. Clear and convincing evidence was offered at the trial of this matter to establish that while appellant did complete certain aspects of her case plan, she continuously and repeatedly was unable to implement what she learned through counseling and parenting classes. Specifically, appellant never dealt with the mental health issues that caused her to become involved in situations that could prove dangerous to herself and her children. For example, appellant, with the help of LCCS, was able to find stable public housing and was provided with domestic violence counseling, but she was never able to make the environment in that home safe for her children because she continued to allow other persons to control and manipulate her and was, once again, physically abused by those persons. As described by one caseworker, appellant lived in chaos, the same chaos that led to the removal of the children from her care. Thus, we find that clear and convincing evidence demonstrated that the condition set forth in R.C. 2151.414(E)(1) existed.
 {¶ 31} Because one of the requisite conditions existed to support a finding that Devon, Cameron, Thomas, and Kyle could not be placed with their mother within a reasonable time or should not be placed with her, we need not discuss the other conditions[1] cited by the juvenile judge. For this reason, appellant's second assignment of error is found not well-taken.
 {¶ 32} Appellant's first assignment of error asserts that finding that it was in the best interest of Devon, Cameron, Thomas, and Kyle to award permanent custody of these children to LCCS was against the manifest weight of the evidence.
 {¶ 33} R.C. 2151.414(D) requires a juvenile court to, in determining the best interest of a child, consider all relevant factors, which include, but are not limited to:
 {¶ 34} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 35} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 36} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 37} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 38} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 39} As discussed above, appellant's children, who were 14, 12, 9, and 7 at the time of the in camera hearing, expressed a wish to live with their mother because they love her. While this wish must be considered by a juvenile court, it must also be balanced against other factors that are relevant to a court's best interest determination. Here, the children were in the temporary custody of a children services agency for more than 12 months of a consecutive 22 month period. There were no relatives who could care for any or all of the children at the time of the permanent custody hearing.
 {¶ 40} The boys were in the same foster home for that entire period, and their foster parents indicated that they wanted to keep them. While the girls had not been in the same foster home for the entire period, they were doing very well in their current placement. Their foster mother also wanted to have Devon and Cameron in her home. All four children have significant psychological conditions that require a legally secure placement. Kyle also has a physical condition that affects his speech. Therefore, of great import is the fact that clear and convincing evidence was offered to show that the children's mental and physical needs were being addressed and remedied in their foster homes. Consequently, in weighing all of the pertinent factors, we conclude that the trial court's decision finding that it is the children's best interest to award permanent custody to LCCS was not against the manifest weight of the evidence. Appellant's first assignment of error is found not well-taken.
 {¶ 41} On consideration whereof, this court finds that substantial justice was done the party complaining, and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, J., Pietrykowski, J., Skow, J., concur.
[1] Clear and convincing evidence demonstrated the existence of those conditions cited in R.C. 2151.414(E)(4) and (14) with regard to both the mother and the father of Devon, Cameron, Thomas, and Kyle.